GERHARD & HEY CO., INC. (ART BOOK PUBLICATIONS, INC.) *v.*
UNITED STATES

No. 7580.—Invoices dated London, England, November 15, 1939, etc.
Certified November 22, 1939, etc.
Entered at New York, N. Y., December 16, 1939, etc.
Entry No. 50291, etc.

(Decided on remand [Reap. Dec. 6252] April 27, 1948)

*Daniel P. McDonald* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney),
for the defendant.

KINCHELOE, Judge: The merchandise covered by these reappraisement appeals listed in schedule A, hereto attached and made a part hereof, consists of art books. There are 15 appeals involved herein. In 14 of them the merchandise was exported from France, and in one appeal, No. 139877–A, the merchandise was exported from England. The books were entered at a value of 33⅓ per centum of their retail list price, and were appraised on the basis of foreign value at 66⅔ per centum of their retail list price. The importer claimed that the merchandise should be appraised on the basis of cost of production.

This case was previously tried, submitted, and decided by this court in a decision dated May 25, 1943 (Reap. Dec. 5875, 10 Cust. Ct. 626), at which time it was held by the trial judge on the evidence introduced by the plaintiff and a special agent's report introduced by the defendant, that the cost of production was the proper basis of appraisement, and the court found certain values which were adjudged to be the proper cost of production of the books in all the cases, except 139877–A, the single case covering merchandise exported from England, as to which the appeal was dismissed for failure of any proof.

Subsequently on June 8, 1943, a motion for a rehearing was filed by the Government, and on the 22d day of October 1943, this court made an order vacating and setting aside the said judgment and restoring the case to the trial calendar for further evidence (Reap. Dec. 5942, 11 Cust. Ct. 446). Thereafter on May 17, 1944, additional testimony was taken relating to the values of the said merchandise. On January 2, 1945, this court rendered its decision on the rehearing and again held that there was no foreign value, no export value, no United States value, and that the cost of production was the proper dutiable basis, but that there was not sufficient evidence to enable the court to determine same. Thereupon the court upheld the appraised values as the correct dutiable values (Reap. Dec. 6081, 14 Cust. Ct. 285).

An appeal was then taken to the third division of this court by the importer and on October 17, 1945, said division affirmed this court's decision *in toto* (Reap. Dec. 6226, 15 Cust. Ct. 437). Shortly thereafter counsel for plaintiff made a motion before the third division to set aside its affirmance of this court's judgment and to remand the case to this court for all purposes, on the ground that counsel for plaintiff had learned that after the Germans were driven out of Paris the books of account of the publisher had been found intact. An order was accordingly signed by the third division on December 17, 1945 (Reap. Dec. 6244, 16 Cust. Ct. 308), vacating and setting aside the judgment of the third division rendered October 17, 1945, and that of the trial judge of January 2, 1945, and restoring the case to the docket for a rehearing before the third division. At the rehearing, January 11, 1946, counsel for the plaintiff moved that the case be remanded to the trial judge for a new trial. In a written decision dated January 31, 1946, the third division granted said motion (Reap. Dec. 6252, 16 Cust. Ct. 321).

Thereupon the case was again set for further hearing before this court on October 27, 1947, at which time plaintiff introduced in evidence the affidavits of Lucien Le Guerinel, a public accountant, and Emeni Somogyi, a publisher of art books, bearing on the cost of production of the books being considered. No additional evidence was offered by the Government. As it has already been determined that there was no foreign value, no export value, and no United States value for the merchandise, it now only remains to determine whether the additional evidence of plaintiff is sufficient to prove the cost of production as defined under section 402 (f) of the Tariff Act of 1930.

Because of the extensive history and complex record in this case, the plaintiff herein having had the third opportunity to prove the cost of production of these books, I feel that the evidence of the various cost figures should be analyzed with a very critical eye.

Counsel for the Government takes particular issue with the plaintiff's proof as to the item of profit. Therefore that element of cost of production will be discussed first, and if it be found that the proof is defective in respect to that element, it will be unnecessary to discuss the other elements of the definition of cost of production as provided by section 402 (f) of the tariff act.

These books were sold to this importer at a price which was equivalent to the retail selling price, less 66⅔ per centum discount, and at the same time books in the French language were sold in France by this manufacturer on a 33⅓ per centum discount basis. Our appellate court in its decision remanding this case (Reap. Dec. 6226, *supra*), stated:

There is also to be considered the fact that at the time Art Publications was organized, Gloeckner (majority shareholder and president of the publisher) expected eventually to own shares of the company. In fact, in March 1940, he owned 1400 out of 1500 shares of the corporate stock. This might account for the fact that the French books were sold in France at a discount of 33⅓ per centum while the English books were sold in the United States at a discount of 66⅔ per centum. Mr. Gloeckner stated:

X Q. And when you invoiced this at 66⅔ percent off the $3.50 or $3 price whatever the book was, you invoiced it at a price at which you thought you could make a profit; is that correct?—A. Yes.
X Q. And was it also caused by the fact that you were sharing the profit of 66⅔ per cent?—A. Yes, it was.
X Q. And because you owned the company in the United States?—A. Yes, that is true. [Parentheses supplied.]

It therefore appears elementary that the margin of profit realized by the publisher on the present transactions was less than the margin of profit realized generally on the French books sold in France, and while the said books in the French language have been held not to be similar to the imported books, there is no proof in this record that they were not "merchandise of the same general character as the particular merchandise under consideration" as provided by said section 402 (f) of the Tariff Act. The profit realized on the sales of said French books must therefore be considered in determining this item of profit.

Collective exhibit 5, the affidavit of the French public accountant, introduced at the hearing on remand, claims the cost of production of the book entitled "Toulouse-Lautrec," the figures for which will be used herein to serve as a representative example, to be 25.82 French francs per copy. This amount, according to the affidavit, includes an item of approximately 1.3 per centum for profit. Converted into United States currency this cost-of-production figure would amount to approximately $0.6455 per copy, with slightly over 8 mills being included for profit.

This title is invoiced at $1 per copy, United States currency, on a blue consular invoice entitled "Invoice of Purchased Merchandise," which is the form required to be used in instances where merchandise has been purchased or imported in pursuance of a purchase. Said form requires the invoice price to be the purchase price. If the costs of material, labor, and general expenses, as set forth in collective exhibit 5, be accepted, the cost of production for said representative title would be approximately $0.637 per copy, United States currency, without considering profit. The span of difference between the foregoing figure of $0.637 and the importer's purchase price of $1 is much greater than the amount of profit as set forth in collective exhibit 5. This difference is not explained and appears to be unreconcilable. In view of the fact that the exporter testified that his sales to this importer were made with the concession of a 66⅔ per centum discount, rather than the 33⅓ per centum discount extended to purchasers in

France, I am of opinion that the additional affidavit submitted on the retrial of this case is not entitled to sufficient probation to establish the cost of production for this merchandise.

Exhibit 6, also introduced at the hearing held after the remand by the appellate division, is an affidavit by the sole owner and proprietor of Librairie Somogyi, publishers of art books in Paris, France. After reciting his familiarity with all of the business transactions of his firm, he states that for the past 11 years he has been familiar with the books published by Hyperion Press of Paris, France, and knows that they are both of the same general class and character which are bought, sold, and used for the same general purposes, viz, "dissemination of knowledge and the creation of interest in the paintings of the Great Masters." He then gives his firm's profit and general expenses as follows:

4. That for the years 1939 and that part of 1940 until Paris was occupied by the Germans on June 14, 1940, the general expenses of his concern were 12% for 1939 and 14% for 1940 and that his net profit for the same period was 10% for 1939 and 12% for 1940.

I do not feel that the foregoing quotation, by itself, is sufficient to establish the general expenses or profit to be used in calculating the cost of production of a different publisher, especially when the next paragraph of said exhibit 6 states:

5. That from knowledge gained from conversations with other publishers of similar books he knows that the general expenses and net profits of other publishers were substantially the same as that shown in Paragraph 4 for his own concern.

And further deponent saith not.

which is entirely hearsay and entitled to no evidentiary value.

The merchandise involved in reappraisement 139877–A consists of an importation from England and the record is still silent as to any proof of cost of production for those books in England.

I am therefore of opinion, after considering all of the evidence herein, for the reasons expressed in my previous decision in this case, Reap. Dec. 6081, *supra*, as well as for the above-stated reasons, that the record contains no evidence of sufficient probation to establish the cost of production of the involved merchandise exported from France.

On the basis of the record before me, I find as a matter of fact:

1. That the merchandise in question consists of certain books printed in the English language.

2. That at the time of exportation of this merchandise there was no foreign value, export value, or United States value as such values are defined in section 402 of the Tariff Act of 1930, as amended, for such or similar merchandise.

3. That the proper basis for appraisement of the books in question is cost of production, as such value is defined in section 402 (f) of said tariff act.

4. That this record does not establish the cost of production in England for the merchandise involved in reappraisement 139877–A.

5. That this record does not establish the cost of production in France for the merchandise involved in each of the appeals other than reappraisement 139877–A.

As all of these appeals for reappraisement involve merchandise exported subsequent to the effective date of the Customs Administrative Act of 1938, I hold as a matter of law that the proper values in each case are the values found by the appraiser.

Judgment will be rendered accordingly.